**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ANGELA HICKS, individually**
**and on behalf of all others**
**similarly situated,**

      **Plaintiff,**

**v.**                                    **Case No.: 8:19-cv-00261-JSM-TGW**

**LOCKHEED MARTIN CORPORATION,**

      **Defendant.**
_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Fed.R.Civ.P. 23, Named Plaintiff Angela Hicks files this Unopposed Motion

with incorporated Memorandum of Law, seeking an Order: (1) preliminarily approving the

Settlement Agreement between Named Plaintiff, and  Defendant Lockheed Martin Corporation

("Lockheed" or "Defendant") (collectively the "Parties"), and the putative class; (2) preliminarily

certifying a class for settlement purposes only; (3) approving the form and manner of notice to the

class; (4) scheduling a fairness hearing for the final consideration and approval of the Parties'

settlement; and, finally, (5) approving the settlement in a subsequent Order.  A proposed Order

granting this Motion is attached as Exhibit A.  All defined terms contained herein shall have the

same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement")

attached as Exhibit B.  Defendants support the ultimate relief requested by Plaintiff and join

Plaintiff in requesting that the Court approve the Order attached as Exhibit A.  However,

Defendants do not agree with and dispute many of the averments contained in the Memorandum

in Support of Motion for Preliminary Approval of Settlement and the exhibits appended to that Motion.

In support of this Unopposed Motion, Plaintiff respectfully submits the following:

## I.    BACKGROUND AND OVERVIEW OF SETTLEMENT.

On January 9, 2019, Plaintiff filed a Class Action Complaint against Defendant in which she asserted claims for herself and a putative class under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").

In her Complaint Plaintiff alleged Defendant violated the COBRA Notice requirements by providing her and the putative class members whom she seeks to represent with a deficient COBRA notice ("COBRA Notice") in violation of  29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a).  The Parties have since reached an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiff and putative class members against Defendants and all Released Parties.

The Settlement provides for Settlement Payments to be made to approximately 54,000 Settlement Class Members. The Settlement Administrator will establish a Qualified Settlement Fund for purposes of administering the Settlement.  The Settlement Fund Payor will contribute the gross sum of $1,250,000 into the fund as per the terms of the Settlement Agreement.   The Settlement Class Members will not be required to take any action to receive a portion of the funds, making it a "claims paid" settlement.   The gross payment per Settlement Class Member is approximately $23.15 per Settlement Class Member ($1,250,000 ÷ 54,000 = $23.15).   If the requested amounts are granted for attorneys' fees, administrative expenses, and a Class Representative Service Award, the parties anticipate that each Settlement Class Member will

receive a pro rata net payment of approximately $14.00. Given the size of the class, this net amount is consistent with COBRA class action settlements that have been approved by other federal courts.

If any money remains in the Settlement Fund after these distributions and after Settlement Class Members have had 60 days to cash their settlement checks, left over funds shall be paid as a *cy pres* donation to a non-profit 501(c)(3) charity, the Camaraderie Foundation, subject to Court approval. The proposed Settlement is fair and reasonable, and Preliminary Approval by the Court should be granted.

A. **Allegations included in Named Plaintiff's Complaint.**

This is a putative class action brought by Plaintiff against Defendant under 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a). The Lawsuit generally alleges Defendant provided Plaintiff and other class members with a deficient COBRA Notice. More specifically, Plaintiff asserted that Defendant's COBRA Notice did not adequately inform her how to exercise her rights to elect COBRA coverage. In violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq*. the Notice failed to: (i) include a date certain on which continuation coverage ends; (ii) include an address for payment of premiums; (iii) identify the Plan Administrator; and, finally, (iv) be written in a manner calculated to be understood by the average plan participant. As a result of the alleged violations in the Complaint, Plaintiff sought statutory penalties, injunctive relief, attorneys' fees, costs and expenses on behalf of herself and all others similarly situated.

On February 21, 2019, Defendant filed a Motion to Transfer (Doc. 13) this case to the United States District Court for Maryland and, at the same time, asked the Court to stay its deadline to respond to the Complaint. During the pendency of Defendant's Motion to Transfer the two sides agreed that an early mediation to discuss a potential class-wide amicable resolution might be fruitful. On April 4, 2019, the Parties filed a Joint Motion to Stay (Doc. 25) the entire case pending

completion of mediation.  The Court granted the Joint Motion (Doc. 26), and this case has been stayed since.  Mediation was then scheduled for June 19, 2019.

### B.   **Defendant's Defenses**.

Had mediation been unsuccessful, Defendant had myriad defenses to Plaintiff's allegations, including defenses to class certification, defenses to the merits of the case, defenses to damages and an Article III standing defense.  Specifically, Defendant denied, and continues to deny, that it violated the 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to the Named Plaintiff and/or any putative class members because the COBRA Notice complied with the notice requirements under ERISA.  Furthermore, Defendant denies that Plaintiff suffered any damages from the alleged inadequate Notice.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in the Action, denies that the claims asserted by Named Plaintiff are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever.  The Settlement Agreement and this Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity.  However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

### C.   **Settlement Negotiations and Mediation.**

The Parties attended an all-day mediation before a highly-respected mediator, Chris Griffin, on June 19, 2019. Counsel for Defendant flew from Louisiana and Maryland to Tampa to attend the mediation. After extensive arm's lengths negotiations between experienced class action counsel, a final agreement to settle was reached. On June 20, 2019, Mr. Griffin informed the Court of same. (Doc. 29). Pursuant to Local Rule 3.08(b), based on the Parties' agreement, the Court entered a 60 day Order of Dismissal that same day, June 20, 2019. (*See* Doc. 30). The Court then extended the time to file the Preliminary Approval Motion to September 3, 2019. (See Doc. 31).

As a result of the agreement reached, the Parties agreed to enter into the Settlement Agreement attached hereto as Exhibit B, for which they now seek Court approval. The Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action, present and future, arising from, related to, or based upon this litigation as to the Named Plaintiff and all putative class members.

## II.    THE PROPOSED SETTLEMENT.

### A.    The Proposed Settlement Class.

The Settlement Agreement defines the proposed Settlement Class as follows: "All participants and beneficiaries in the Defendant's group health plans who were sent a COBRA Notice by or on behalf of Defendant between January 1, 2015 through the date the Court grants Preliminary Approval, as a result of a qualifying event, as determined by Defendant." (referenced herein as the "Settlement Class").

### B.    Benefits to the Settlement Class and Named Plaintiff.

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all Settlement Class Members in exchange for the Defendant's agreement to pay $1,250,000 to the Settlement Fund. The Parties negotiated the case on a common fund basis, meaning that the

Settlement amounts the parties were exchanging were inclusive of all attorneys' fees, incentive awards, and settlement administrative expenses. The Parties did not negotiate attorneys' fees until after all terms related to the size of the common Settlement Fund, and the class definitions, were agreed upon.

With the Settlement Class comprised of approximately 54,000 members, each Settlement Class Member will receive a net settlement payment of approximately $14.00 if the Court grants the amounts for attorneys' fees, administrative expenses, and a Class Representative Service Award. This is a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms to receive a share of the Settlement Fund. Rather, all Settlement Class Members will simply receive checks after the Effective Date of the Settlement. If Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, the Camaraderie Foundation.

The Named Plaintiff will request court approval of an additional claim in the sum of $6,000 as a Service Award for the services provided to the Settlement Class in connection with the prosecution of this Action, in addition to the claim provided her as a Settlement Class Member. The Settlement Agreement also provides that Plaintiff's Counsel's fees, settlement administration costs and Service Award for the Named Plaintiff are to come out of the Settlement Fund, subject to the Court's approval. Class Counsel is authorized to file an unopposed petition for up to one-third of the fund as attorneys' fees and costs. Neither Settlement approval nor the size of the Settlement Fund are contingent upon the full amount of any requested fees or class representative service award being approved.

## C.    <u>Administration of Notice</u>.

The Parties have agreed to utilize a private, third-party vendor, American Legal Claim Services, LLC, to administer notice in this case. The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid from the Settlement Fund.

The Parties seek Court approval of the agreed upon Short Form and Long Form Notices of Settlement to the Class Members, attached hereto as Exhibit C and Exhibit D, in the Court's Preliminary Approval Order. Within ten (10) days of the Court's Preliminary Approval approving the Notices, the Settlement Administrator shall provide both Notices to Class Counsel and Defendant's Counsel. Within twenty (20) days of approval from the Parties, the Settlement Administrator shall mail the Short Form Notice by U.S. mail to all Settlement Class Members. The Short Form Notice shall apprise the Settlement Class of the existence of the Settlement Agreement and of the Settlement Class Members' eligibility to recover their pro-rata portion of the settlement proceeds, and will include an explanation of the "claims paid" process, as well as an explanation as to what happens if the settlement checks are not timely cashed. Namely, the funds will be made part of a donation to a *cy pres* recipient, the Camaraderie Foundation.

The Short Form and Long Form Notices shall inform Settlement Class Members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) that they will be bound by the Settlement Agreement; (4) the date, time and location of the final fairness hearing scheduled by the Court (to be held at least 90 days after the required CAFA notices have gone out); and (5) that the Court retains the right to reschedule the final fairness hearing without further notice.

The Settlement Agreement provides that Settlement Class Members who choose to object to the settlement must do so within 60 days of the Short Form Notice mailing date. If the Court grants Final Approval of the settlement, the Settlement Fund Payor will transfer the full amount

of the Settlement Fund to the Settlement Administrator within thirty (30) days of the Effective Date of the Settlement.  Settlement checks will be mailed to all Settlement Class Members within ten (10) days after receipt by the Settlement Administrator of the Settlement Fund monies.  To the extent any money remains in the fund after these distributions and after Settlement Class Members have had 60 days to cash their settlement checks, such monies shall be paid as a *cy pres* donation to the Camaraderie Foundation, subject to Court approval.

### D.    Attorneys' Fees and Expenses.

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to one-third of the fund as attorneys' fees and costs and any settlement administration expenses.  Class Counsel will file a separate motion seeking approval for fees and costs.  Defendant does not oppose the amount of fees and costs sought by Class Counsel for up to one third of the total fund.

### E.    Class Action Fairness Act Notice.

Defendant will cause notice of the proposed Settlement to be served upon the appropriate Federal and State officials, as required by the Class Action Fairness Act of 2005 ("CAFA").

## III.    PRELIMINARY CLASS CERTIFICATION.

As part of Preliminary Approval of the Settlement, the Parties respectfully seek certification of the Settlement Class solely for the purposes of settlement, as described here.

### A.    The Settlement Meets the Requirements of Rule 23(e) for Approval.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *5 (S.D. Fla. June 15, 2010); *Holman v. Student Loan Xpress. Inc.*, 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009); "In

8

the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith*, 2010 U.S. Dist. LEXIS at *5-6. Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement. *Id.* The decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir.1977)).

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here and the Court should enter an order Preliminarily Approving the Class Action Settlement Agreement.

### 1. The Class representative and Class Counsel Have Adequately Represented the Class.

There is no question that Angela Hicks and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W.*

*McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Angela Hicks, is adequate given that her interests are equivalent to those of the Settlement Class. There is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. The Named Plaintiff has the same interest as the Settlement Class Members in prosecuting her claims.  She, along with her counsel, secured a $1.25 million dollar settlement from a highly sophisticated Defendant in favor of the class members she seeks to represent.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the attached declarations of Luis A. Cabassa and Brandon J. Hill of Wenzel Fenton Cabassa, P.A.  In fact, Judge Moody recently appointed the undersigned as class counsel in *Figueroa v. Baycare Healthcare Systems, Inc*., 8:17-cv-01780-JSM-AEP (M.D. Fla. Nov. 14, 2018) (Doc. 83).  *See also Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersign as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63) (same).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference.  *Thacker v. Chesapeake Appalachia, L.L.C*., 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C*., 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the

relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

**2.      The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator.**

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations that were overseen by an experienced and impartial mediator who was selected by the Parties and appointed by the Court. (Doc. 28). This also weighs in favor of approval. *See Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

The proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel. The Parties participated in mediation with Mr. Griffin during an all-day mediation at great expense to both sides and with no promise Plaintiff's counsel would ever recover anything at all. The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations in an effort to avoid costly and protracted litigation. Attorneys' fees were not discussed until the Settlement Class Members' recovery was decided upon.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *See generally* Declarations of Luis A. Cabassa and Brandon J. Hill; *see also Pierre-Val,* 2015 U.S. Dist. LEXIS at *2 ("courts should

11

give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3. The Settlement Provides Significant Relief to Class Members.

As detailed above, the Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. The Settlement requires Defendant to pay $1,250,000 into a Settlement Fund to resolve the claims at issue. This represents a gross recovery of approximately $23.15 per Settlement Class Member ($1,250,000 ÷ 54,000 = $23.15), with a net recovery after attorneys' fees and costs, administrative expenses, and a Service Award, of approximately $14.00. This falls well within the range of reasonableness for settlement purposes. *See, e.g.*, *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement in similar COBRA notice case in which each class member's gross recovery was only $32.22). All Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a Settlement Payment.

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships*

*Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.  Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness."  *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (*citations and quotations omitted*).

There is a risk that Plaintiff and the Settlement Class could recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency.  *See, e.g*., *Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad faith); *Cole v. Trinity Health Corp*., 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) *aff'd* 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA Notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc*., 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc*., 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice).  In addition, Defendant stopped using the COBRA Notice at issue in this case. Accordingly, the negotiated relief is more than adequate, and should be approved.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive.  The risk of the Named Plaintiff being unable to establish liability and damages was

also present because of the numerous defenses asserted by Defendant.  Because this case settled not long after filing, Named Plaintiff had yet to survive class certification, and summary judgment. Each of these phases of litigation presented serious risks, which the Settlement allows Named Plaintiff and the Settlement Class to avoid.  *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain.  *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

The gross *pro rata* Settlement Class Member recovery of $23.15 in this settlement is in line with per class member settlement amounts in similar cases.  Under the Parties' Settlement Agreement the Settlement Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than the minimum that could have been recovered through successful litigation.  Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties.  The Named Plaintiff supports the Settlement.  Class Counsel believes that the bulk of the other Settlement Class Members will have a favorable reaction to the Settlement and not object once they have been advised of the settlement terms through the Court-approved Class Notices.

**4.    The Proposal Treats Class Members Equitably Relative to Each Other.**

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. In fact, they are treated identically. As set forth above, with the Settlement Class comprised of approximately 54,000 participants, each Settlement Class Member will receive a gross settlement payment of $23.15 with a net settlement payment if the Court awards attorneys' fees and expenses, administrative costs and a Service Award of approximately $14.00. This a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the Settlement Effective Date. If Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, the Camaraderie Foundation.

If Plaintiff had chosen to continue to litigate her claims, a successful outcome was not guaranteed. As discussed below, Plaintiff faced significant risks with respect to liability, damages, and certification of a litigation class. First, with respect to liability, important issues remained to be decided upon the evidence presented. The Court did not have before it (and therefore did not consider) arguments Defendant would have raised in its motion to dismiss.

Second, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiff was able to prove that Defendant violated the COBRA-notice regulation, Plaintiff and Settlement Class Members may have recovered only nominal damages, or even nothing at all.

Finally, Plaintiff would have faced risks on class certification as well. In certain cases involving deficient COBRA notices, class certification has been denied. *See, e.g., Brown-Pfifer v. St. Vincent Health, Inc.,* 2007 U.S. Dist. LEXIS 69930, at *26 (S.D. Ind. Sept. 20, 2007); *Kane v.*

15

*United Indep. Union Welfare Fund,* 1998 U.S. Dist. LEXIS, at *19 (E.D. Pa. Feb. 24, 1998). Thus, it was not guaranteed that the Court would have certified a class on the basis of the contested motion for class certification and the response in opposition thereto in this case.

To avoid the foregoing risks, it was reasonable for Plaintiff to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for Settlement Class Members. *See, Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5.    The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all. In the absence of a settlement, Plaintiff would have had to take depositions, appear for her own deposition, engage in class certification motion practice, engage in Rule 12(b)(6) and summary judgment motion practice, prepare for trial, and present her case at a trial on the merits. The costs associated with these litigation activities would have been significant. Moreover, even if Plaintiff had won certification of a class and litigated the class claims to a successful conclusion, it is likely that Defendant would have appealed any judgment entered against it, resulting in further expense and delay.

Complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into the Settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation.

**IV.    The Proposed Notice of Settlement Is Reasonable.**

      In addition to reviewing the substance of the parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all Settlement Class Members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all potential class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here.

      Under the Settlement, each Settlement Class Member will be sent a Short Form Notice of the proposed settlement via U.S. First-Class Mail in the form of a postcard, informing them of the terms of the Settlement and their right to object, subject to Court approval in its Preliminary Approval Order of both the Short Form and Long Form Notice.   The Short Form Notice will direct the Settlement Class Members to the Settlement Administrator's website where additional information will be provided.   The content of the Long Form Notice is also reasonable and appropriate. Under Rule 23(c)(2)(B), notice must clearly and concisely state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

      The proposed Notices of Settlement include all of this information.   In addition, the Notices of Settlement clearly spell out the terms of the proposed Settlement, provide a website address where Settlement Class Members can obtain a copy of the Settlement Agreement and other relevant documents, and include a phone number that they may call if they have any questions.

Accordingly, this Court should approve both the Short Form and the Long Form Notice of Settlement, as both the content of the notices and the methods of dissemination are reasonable.

## V.    Class Certification Is Appropriate Under Rule 23(a) for Settlement Purposes.

In addition to approving the proposed Settlement and Notice of Settlement, this Court should also certify the proposed Settlement Class for settlement purposes only, under Fed.R.Civ.P. 23(a). "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks and citation omitted). Whether to certify a class action rests within the sound discretion of the district court. *Cooper v. Southern Co.,* 390 F.3d 695, 711 (11th Cir. 2004).

However, in the context of a settlement, class certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League,* 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Horton v. Metropolitan Life Ins. Co.,* 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

### A.    The Requirements of Rule 23(a) are Met.

Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Plaintiff has satisfied all four requirements as set forth below.

1.     __Numerosity.__

Rule 23(a)(1) requires Plaintiff to show that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable. Here, there are approximately 54,000 Settlement Class Members. Thus, the numerosity standard is easily satisfied. *See Williams v. Wells Fargo Bank, N.A.,* 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate").

2.     __Commonality.__

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." In order to satisfy this requirement, there must be "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mowhawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks and citation omitted).

"The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 673 (S.D. Fla. 2011) (internal brackets and quotations marks omitted). Here, there are common issues regarding (among other things): (1) whether Defendant violated COBRA's notice requirements; (2) whether any such violation was willful or the result of bad faith; and (3) whether and to what extent statutory penalties are appropriate. These common issues support certification of the proposed Settlement Class for settlement purposes only. *See Pierce v. Visteon Corp.,* 2006 U.S. Dist. LEXIS 98847, at *12 (S.D. Ind. Sept. 14, 2006) (holding there was commonality where plaintiff challenged defendants' COBRA notice practices "as applied to the entire class"); *Hornsby v. Macon Cty. Greyhound Park, Inc.,* 2013 U.S. Dist LEXIS 6235, at *5 (M.D. Ala. Jan. 16, 2013) (finding commonality satisfied and certifying COBRA notice class for settlement purposes).

### 3. **Typicality**.

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147, 157 n.13 (1982); *see also In re Checking Account Overdraft Litig.,* 275 F.R.D. at *3 n.8 (citation omitted). Typicality is satisfied where the named plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984).

Here, Plaintiff is typical of the Settlement Class that she seeks to represent, as she received the same COBRA notice as the putative class members and their claims stem from that COBRA Notice. Accordingly, Rule 23(a)(3) is also satisfied. *See Pierce,* 2006 U.S. Dist. LEXIS 98847, at *13 (typicality met where "[a]ll of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. § 1166, a common course of conduct, and are based upon the same legal theory").

### 4. **Adequacy**.

The requirement of adequate representation addresses two issues: (1) whether plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the named plaintiff has interests antagonistic to those of the rest of the class. *Williams,* 280 F.R.D. at 673. Here, Plaintiff's counsel have extensive experience litigating other class action cases. *See generally* Declarations of Luis A. Cabassa (Exhibit E) and Brandon J. Hill (attached as Exhibit F).

Moreover, "[t]here is nothing to indicate that [Plaintiff's] interests are in conflict with any members of the class." *Brand v. Nat'l Bank of Commerce,* 213 F.3d 636 (5th Cir. 2000). To the contrary, Plaintiff "shares common interests with the class members and seek[s] the same type of

relief[.]" *In re Checking Account Overdraft Litig.*, 275 F.R.D. at *7. Accordingly, the adequacy requirement is also met.

**B.      The Requirements of Both Rule 23(b)(1) and Rule 23(b)(2) Are Met.**

The proposed class also meets the requirements of Federal Rule of Civil Procedure 23(b)(1) and (b)(2).

**1.      Rule 23(b)(1).**

Rule 23(b)(1) provides that the Court may certify a class if the prosecution of separate actions by individual class members would either (A) create the risk of inconsistent adjudications that would result in incompatible standards of conduct for the defendant, or (B) would as a practical matter be dispositive of the interests of absent members. Fed. R. Civ. P. 23(b)(1)(A)-(B). Rule 23(b)(1)(A) applies "where the party is obliged by law to treat the members of the class alike." *Dukes*, 564 U.S. at 361 n.11 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Rule 23(b)(1)(A) class certification is used to avoid situations in which separate suits would trap parties "in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." *Rosario v. King & Prince Seafood Corp.*, No. 204-cv-036, 2006 WL 236710, at *14 (S.D. Ga. Mar. 7, 2006) (internal citation omitted).

Here, the driving question at the center of all class member's claims is whether the COBRA Notice sent was deficient in violation of  29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a).  If the Court determines that COBRA notice was deficient, and another Court determines that it is not, those conflicting rulings would create incompatible standards of conduct for Defendant. The Plan is a single, cohesive nation-wide Plan and cannot be operated simultaneously using different COBRA Notices.  Defendant would be left uncertain as to what information its COBRA Notice must contain.  This potential for conflicting decisions meets the requirements of

Rule 23(b)(1)(A). *See Henderson v. Emory Univ.*, No. 1:16-cv-2920, 2018 WL 6332343, at * 9 (N.D. Ga. Sept. 13, 2018) (finding requirements of 23(b)(1(A) met in breach of fiduciary duty case because adjudicating claims individually ran the risk of placing conflicting obligations on plan fiduciaries and recordkeepers); *see also Klewinowski v. MFP, Inc.*, No. 8:13-cv-1204, 2013 WL 5177865, at *3-4 (M.D. Fla. Sept. 12, 2013) (finding requirements of 23(b)(1)(A) met in Fair Debt Collection Practices Act case where prosecution of separate actions could lead to inconsistent legal adjudications).

In addition, the requirements of Rule 23(b)(1)(B) are also met. Plaintiffs brought claims seeking a declaratory judgment and injunctive relief under ERISA, which is limited to relief that is traditionally equitable in nature. *See Green v. Holland*, 480 F.3d 1216, 1224 (11th Cir. 2007). If Plaintiff succeeds in her argument that the COBRA notice was deficient, she would obtain a declaratory judgment and injunctive relief to that effect which would require the Plan to stop using the COBRA Notice at issue and change the COBRA Notice to comply with the Court's order. Any such relief would "inure to the benefit of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). Indeed, because of the plan-wide nature of ERISA's remedial provisions, "ERISA litigation 'presents a paradigmatic example of a (b)(1) class." *Kemp-DeLisser*, 2016 WL 6542707, at *12; *see also Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474, 479 (S.D. Ga. 1991) (certifying ERISA class under Rule 23(b)(1)(B) because any recovery would inure to the benefit of the plan and any individual action would impair the ability of the other beneficiaries and participants to protect their interests.") If one court adjudicates one individual's claim that the COBRA Notice is deficient and grants that person a declaratory judgment and requires the Plan to change the COBRA Notice to ensure it complies with ERISA going forward, that would have a direct and dispositive impact on the ERISA claims of other class

members. *See Hodges v. Bon Secours Health Sys., Inc.*, No. 1:16-CV-01079-RDB, 2017 WL 4228018, at *2 (D. Md. July 10, 2017) (finding the requirements of Rule 23(b)(1) satisfied in church-plan case); *Griffith v. Providence Health & Servs.*, No. C14-1720-JCC, 2017 WL 1064392, at *1 (W.D. Wash. Mar. 21, 2017) (same); *Kemp-DeLisser*, 2016 WL 6542707, at *12 (same).

The Court should preliminarily certify the Settlement Class under both Rule 23(b)(1)(A) and (B).

2.    Rule 23(b)(2).

The proposed class also meets the requirements of Rule 23(b)(2). Under Rule 23(b)(2), class certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, No. 04-15477, 443 F.3d 1330, 1336 (11th Cir. 2006) (citing Fed. R. Civ. P. 23(b)(2)); *Groover v. Michelin North Am., Inc.*, 187 F.R.D. 662, 670 (M.D. Ala. 1999).  Rule 23(b)(2) applies "when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. The fact that the declaratory relief sought is a "prelude to a request for damages" or other monetary relief does not make certification under Rule 23(b)(2) inappropriate. *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 764 (7th Cir. 2003). "As long as the concrete follow-on relief that is envisaged will if ordered . . . be the direct, anticipated consequence of the declaration, rather than something unrelated to it, the suit can be maintained under Rule 23(b)(2)."

Here, as explained above, Plaintiffs seek injunctive relief and a declaratory judgment that Defendant's COBRA Notice is deficient.  Thus, any monetary relief flows from the declaratory judgment.  Even though the Settlement provides monetary consideration "such monetary

23

consideration is incidental to the equitable relief that Plaintiff[s] requested and the certification of the settlement class is, therefore, appropriate under 23(b)(2)." *Groover*, 187 F.R.D. at 671 (certifying class under Rule 23(b)(2) for claimed violations of ERISA as a result of a reduction in medical benefits); *see also Berger*, 338 F.3d at 763-64. Accordingly, class certification under Rule 23(b)(2) is appropriate. *See, e.g.*, *Kifafi v. Hilton Hotels Retirement Plan*, 189 F.R.D. 174, 177 (D.D.C. 1999) (certifying class under Rule 23(b)(2) for claimed violations of ERISA's anti-backloading and vesting provisions); *Shields v. Local 705, Int'l Broth. of Teamsters*, No. 96 C 1928, 1996 WL 616548, at *5–6 (N.D. Ill. Oct. 23, 1996) (same for claim that defendant improperly withheld plan benefits and service credits from workers after a company merger resulted in a shift to a different plan); *Breedlove v. Tele-Trip Co. Inc.*, No. 91 C 5702, 1993 WL 284327, at *10-11 (N.D. Ill. July 27, 1993) (same for claim that defendants excluded employees from plan after they were improperly reclassified as independent contractors).

The Court should certify the Settlement Class, for settlement purposes only, under Rule 23(b)(2).

For the foregoing reasons, the Parties respectfully request that the Court enter their proposed Preliminary Approval Order and thereby (a) certify the Settlement Class for Settlement purposes only; (b) appoint Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel for Settlement purposes; (c) authorize distribution of the Notice of Settlement to the Settlement Class; (d) set a Deadline to Object; and (e) set a date for a Final Approval Hearing, not to occur until at least ninety (90) days after entry of the Court's Preliminary Approval Order.

## <u>CERTIFICATE OF GOOD FAITH</u>

Plaintiff's Counsel certifies that in conformance with Local Rule 3.01(g) he conferred with Defendant's Counsel about the issues raised in Plaintiff's Motion. Defendant does not oppose the relief requested herein.

DATED this 3rd day of September, 2019.

Respectfully submitted,

*/s/Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 3rd day of September, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

/s/*Brandon J. Hill*
**BRANDON J. HILL**