# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ANGELA HICKS, individually**
**and on behalf of all others**
**similarly situated,**

      **Plaintiff,**

**v.**                              **Case No.: 8:19-cv-00261-JSM-TGW**

**LOCKHEED MARTIN CORPORATION,**

      **Defendant.**

_____/

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND SUPPORTING MEMORANDUM OF LAW

Class Representative Angela Hicks ("Hicks" or "Plaintiff"), pursuant to Fed.R.Civ.P. 23, files this Unopposed Motion for Final Approval of the Parties' Class Action Settlement.[1]  On September 5, 2019, the Court granted Plaintiff's Unopposed Motion for Preliminary Approval of the Class-wide Settlement of the COBRA claims asserted against Defendant. (*See* Doc. 34).  Notice was sent to 54,000+ Settlement Class Members and the reaction to the Settlement is overwhelmingly positive. To date, not a single objection has been made to the Settlement.  In sum, little has changed since the Court's Order granting the Plaintiff's Motions for preliminary approval of the same Settlement, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiff requests that the Court enter the Final Approval Order attached as Exhibit A. Defendants support the ultimate relief requested by Plaintiff and join Plaintiff in requesting that the Court approve the Order attached as Exhibit A.  However, Defendant does not agree with and disputes many of the averments contained in this Unopposed Motion for Final Approval.

---

[1] All defined terms contained herein shall have the same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement"), filed on September 3, 2019 (Doc. 33-2)

In further support thereof, Plaintiff states as follows:

I.     **BACKGROUND.**

   A.     **Overview of Motion.**

   1.     On September 5, 2019, this Court issued an order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 34.) In that Order, the Court found that Settlement terms are "fair, reasonable, and adequate." (*Id*. at ¶ 11.) Following entry of that Order notice was mailed out to the Class Members.  The Settlement Class Administrator sent a notice of Settlement via first class mail to all Settlement Class Members and as of the date of this filing, <u>zero</u> have objected to the Settlement. Thus, the reaction by the Class Members could not have been more positive.  Accordingly, Plaintiff respectfully requests that this Court grant her Motion for Final Approval of Class Action Settlement.

   B.     **Nature of Plaintiff's Claim.**

   2.     On January 9, 2019, Plaintiff filed a Class Action Complaint and Demand for Jury Trial against Defendant, in which she asserted claims for herself and a putative class under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").  Plaintiff alleged that Defendant violated the COBRA notice requirements by providing her and other Class members deficient COBRA notice ("COBRA Notice") that failed to comply with certain requirements of the regulations pursuant to 29 C.F.R. §2590.606-4(b)(4) *et seq.* and the Department of Labor Model Notice.

   3.     Plaintiff sought statutory penalties pursuant to 29 U.S.C. §1132(c)(1) and 29 C.F.R. §2575.502c-1 for herself and each putative Class member who was sent an alleged defective

COBRA notice.  Plaintiff also claimed injunctive relief individually, and on behalf of the putative Class, regarding the subject COBRA Notice.

### C.      **Lockheed's Defenses.**

4.      Defendant has at all times denied that it engaged in any wrongdoing, does not admit or concede any action or potential fault or liability in connection with any facts or claims that have been alleged against it in the Action.  Defendant had available to it numerous affirmative defenses, including those directed at Plaintiff's class allegations – that Plaintiff is an inadequate class representative, the lack of numerosity, typicality, commonality, and that individual issues predominate over those typical of the class.

5.      Defendant also would have likely raised other defenses, including defenses to the merits of the case, defenses to damages and an Article III standing defense.  Specifically, Defendant denied and continues to deny that it violated 29 U.S.C. §1166(a) and 29 C.F.R. § 2590.606-4 with regard to the Named Plaintiff and/or any putative class member because the COBRA Notice complied with the notice requirements under ERISA.  Defendant also denies that Plaintiff suffered any damages from the alleged inadequate Notice.

6.      Additionally, at the time Settlement was reached, Defendant's Motion to Transfer Venue remained pending.

### D.      **Joint Motion to Stay Proceedings Pending Completion of Mediation.**

7.      On April 4, 2019, following briefing on the Defendant's Motion to Transfer Venue (*see* Doc. 13, 18, 24), the Parties agreed to stay this case pending completion of a Class mediation to be conducted by highly respected mediator Christopher L. Griffin.

8.      On April 8, 2019, the Court granted the Parties' Joint Motion to Stay the case pending completion of mediation.

E.     **Mediation and Settlement**.

9.     The Parties attended mediation with Court-appointed mediator Christopher L. Griffin, on June 19, 2019.

10.     Following an all-day mediation session that was attended by multiple attorneys throughout the country, the Parties reached a deal.

11.     The material terms provide, in relevant part, as follows:

a.     The total gross Settlement amount is $1,250,000 ("Settlement Amount"), which includes monies paid to Plaintiff and the putative members of the Class, a Service Award, if any, Class Counsel's fees, costs, expenses, Settlement administration expenses, and mediation fees.

b.     The Parties' Settlement Agreement will be submitted to the Court for preliminary approval (which occurred on September 3, 2019);

c.     Defendant's Counsel shall submit the notices required under the Class Action Fairness Act ("CAFA") to the applicable state and federal officials via U.S. Mail within ten (10) days of the filing of the Preliminary Approval Motion (which occurred on September 13, 2019).  *See* Exhibit B, Declaration of Stacey C.S. Cerrone and CAFA Notice attached as Exhibit 1 to Declaration of Stacey C.S. Cerrone.

d.     Named Plaintiff may apply for a Service Award up to $6,000, which Defendant will not oppose.

e.     Plaintiff's counsel may apply to the Court for attorney's fees up to one-third of the Settlement Amount and seek to recover costs from the Settlement Fund, which Defendant will not oppose.

f.     Plaintiff will select the Settlement administrator to send out the Court-

approved notice (which, in fact, occurred);

g.      The Settlement will be made on a full claims-paid basis with no reverter;

h.      Any remaining balance left in the Settlement Fund will, subject to Court approval, be used as a cy pres award to be donated to a Court-approved cy pres recipient, The Camaraderie Foundation, a non-profit charity whose "mission is to provide healing for the invisible wounds of war through counseling, emotional and spiritual support for all branches of Post-9/11 Veterans, Service Members and their families."[2]

12.      The Parties subsequently agreed upon a Settlement Agreement, which incorporated the Term Sheet provisions.

**F.      The Court's Order granting Preliminary Approval of the Settlement.**

13.      On September 5, 2019, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 34.) In that Order, the Court found that the Settlement terms are "fair, reasonable, and adequate." (*Id.* at 3.) Following entry of that Order notice was mailed out to the Class Members.  As set forth herein, the Settlement Class Members' response to the notice of Settlement confirms that the Court's preliminary analysis was correct. The Settlement Class Administrator sent a notice of Settlement via first class mail to all Settlement Class Members and **zero** objected to the Settlement thus far. Accordingly, Plaintiff respectfully requests that this Court grant this Unopposed Motion for Final Approval of Class Action Settlement.

**G.      The Class Member's Reactions to the Settlement.**

14.      The Settlement Claims Administrator, American Legal Claim Services, LLC

---

[2] https://camaraderiefoundation.org/about-camaraderie/mission/.

("ALCS"), sent the Short Form Class Notice approved by the Court to each of the Settlement Class Members on or around October 4, 2019 via first-class mail. A total of 54,529 Class Notices were mailed to Settlement Class Members. (*See* Exhibit C, Declaration of Keith Salhab from ALCS, ¶ 4) (hereinafter "Salhab Dec.").

15. The Class Notice provided Settlement Class Members with all required information relating to the Settlement including: (1) a summary of the lawsuit and an overview of the nature of the claims; (2) the definition of the Settlement Class certified by the Court; (3) a clear description of the material terms of the Settlement; (4) an explanation of the claims being released; (5) an explanation of Settlement Class Members' rights; (6) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (7) the date, time, and location of the final approval hearing; (8) the internet address for the Settlement website and the toll-free number from which Settlement Class Members could obtain additional information about the Settlement; (9) identification of Class Counsel and information regarding the compensation that they would seek pursuant to the Settlement Agreement; and, (10) identification of the Class Representative and information regarding the Service Award she would seek pursuant to the Settlement Agreement.

16. The Settlement website provided Class Members with access to the following documents: (i) the Long Form of Class Notice which explained the proposed Settlement in detail; (ii) Class Action Complaint; (iii) Class Settlement Agreement and Release, with exhibits; (vi) Joint Motion for Preliminary Approval of Class Action Settlement, with exhibits; and (vii) Preliminary Approval Order. The Long Form of Class Notice included a set of Frequently Asked Questions ("FAQs") and answers about the Settlement.

17. ALCS also set up a toll-free telephone support line that Settlement Class

Members could call to obtain additional information. Thus, Notice to the Settlement Class Members was sufficient and consistent with the Court's Order granting Preliminary Approval.

18.     The Settlement Class Members overwhelmingly accepted the Settlement. Over 50,000 Settlement Class Members received the Class Notice and none have objected as of the date this Motion was filed.

## II.     OVERVIEW OF SETTLEMENT TERMS.

For the reasons set forth below, the Settlement is fair, reasonable and adequate. More specifically,

a.     The Settlement was vigorously negotiated at arm's length with the assistance of the Mediator and after the Parties had exchanged information on the Class;

b.     Unclaimed Settlement funds will not revert to Defendant. The Settlement Agreement provides that unclaimed funds (uncashed checks and those sent but returned for which no available forwarding address can be located) will revert to The Camaraderie Foundation, as a *cy pres* recipient, subject to Court approval;

c.     The Settlement provides for immediate monetary and prospective relief that is well within the range of similar COBRA Notice class action settlements;[3]

d.     The Settlement is not contingent upon the Court's approval of Class Counsel's attorneys' fees or costs, or any Service Award to the named Plaintiff;

e.     The Class Release in the Settlement Agreement is narrowly-tailored to apply only to claims like those asserted in the lawsuit;

f.     The Settlement Agreement provided for direct notice to Settlement Class Members via U.S. First-Class Mail;

---

[3] Notably, a similar settlement agreement was recently approved for alleged deficient COBRA Notice forms in *Valdivieso v. Cushman & Wakefield, Inc.,* Case No. 8:17-cv-00118-SDM-JSS (M.D. Fla. 2018), and in *Carnegie v. FirstFleet, Inc. of Tennessee, Inc.*, Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. 2019).

g.      Settlement Class Members were not required to file claim forms in order to receive settlement checks, making this a "claims paid" settlement;

h.      The Settlement Fund created by Defendant will be a fully-funded Settlement Common Fund;

i.      The Settlement provided the opportunity for potential Settlement Class Members to object to the Settlement within sixty (60) days of Notice being mailed (as of the date of this filing, none did);

j.      If any Settlement Class Members fail to tender their Settlement Payment checks within the period provided in the Settlement Agreement, any funds remaining in the Settlement Account (after deduction for all Court approved deductions) will revert and be paid exclusively to The Camaraderie Foundation, upon Court approval.

A.      **Proposed Final Nationwide Settlement Class.**

The Settlement Agreement calls for final certification of a nationwide Settlement Class defined as follows:  "All participants and beneficiaries in the Defendant's group health plans who were sent a COBRA Notice by or on behalf of Defendant between January 1, 2015 and the date of Preliminary Approval, as a result of a qualifying event, as determined by Defendant."      (the "Settlement Class")

B.      **The Settlement Provides for Significant Relief.**

Provided final approval is granted by the Court, Defendant has agreed to fund a common fund in the amount of $1,250,000, which will be used to compensate Settlement Class Members on a *pro rata* portion of the settlement fund.  This amount includes the anticipated amount that Defendant would pay if every Class Member participated in the Settlement and received a Settlement payment, Class Counsel's fees, costs and expenses, settlement administration

expenses, and a Service Award to Named Plaintiff.

The net proceeds of the Settlement Fund will be distributed evenly among all Settlement Class Members on a *pro rata* basis and will be received on a claims paid basis without the need to fill out, or submit, a claim form.  The gross payment per Settlement Class Member is approximately $23.15 per Settlement Class Member ($1,250,000 ÷ 54,000 = $23.15). If the requested amounts are granted for attorneys' fees and costs, Settlement Administrator expenses, and a Class Representative Service Award, the parties anticipate that each Settlement Class Member will receive a pro rata net payment of approximately $14.00. Given the size of the Class, this net amount is consistent with COBRA class action settlements that have been approved by other federal courts.  The Settlement Administrator will send a Settlement Payment by U.S. Mail to each Settlement Class Member.

C.    **Release of Claims.**

In exchange for the monetary and any other relief set forth in the Settlement Agreement, Settlement Class Members will release Defendant and its third party COBRA Notice providers (including WageWorks, Inc. and/or CONEXIS, Inc.), Defendant's group health plans, its outsourced third party COBRA administrator, and each of their affiliates, parent companies, subsidiaries, predecessors, successors, corporate family members, officers, directors, partners, employees, attorneys, agents, insurers, shareholders, representatives, trustees, principals, and assigns, from all claims asserted in Plaintiff's Complaint and all other claims that arise out of, or relate to, the facts alleged in the Complaint.

Settlement Class Members' claims, if any, which are unrelated to the facts and/or causes of action alleged in this cause are not released by the terms of the Settlement Agreement. To date no Settlement Class Members have objected and the deadline to do so expires on December 3, 2019.

D.    **Notice of Settlement, Claims Process, and Settlement Administration.**

The Parties utilized a private, third-party vendor, to administer Notice in this case. The Parties have also agreed that all expenses, including fees, charged by the Administrator shall be paid from the Settlement Fund.

If the Court grants final approval of the Settlement, Defendant will transfer the full amount of the Settlement Fund to the Settlement Administrator within the time frame set forth in the Settlement Agreement. Settlement checks will be mailed to all Settlement Class Members within ten (10) business days after receipt by the Settlement Administrator of the Settlement Fund monies. To the extent any money remains in the fund after these distributions and after Class members have had 60 days to cash their Settlement checks, such monies shall be paid (as noted above) as a *cy pres* donation to The Camaraderie Foundation.

      **E.**     **Attorneys' Fees and Costs, Class Representative Award and Administration Expenses.**

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to up to 33.33% of the Settlement Amount, which Defendant will not oppose. Class Counsel will file a separate motion seeking approval for fees and costs up to the percentage identified and other limitations set forth in the Settlement Agreement.  The Parties have also agreed that Class Representative Angela Hicks shall have, in addition to her claim provided as a member of the Settlement Class, an additional claim in the sum of $6,000 as a Service Award for the services provided to the Settlement Class in connection with the prosecution of this action. The Service Award shall come out of the Settlement Fund, subject to the Court's approval. Neither Settlement approval, nor the size of the Settlement Fund, is contingent upon the full amount of any requested fees or the Class Representative Service Award being approved.  Finally, Court-approved expenses of the Settlement Administrator shall be paid from the Settlement Fund.

**III.**    **FINAL SETTLEMENT CLASS CERTIFICATION.**

As part of final approval of the Settlement, Plaintiff respectfully seeks final certification of the Settlement Class for the purposes of Settlement in this case, as described above.

### A.        The Settlement Agreement is Reasonable and Fair.

When considering judicial approval of a class settlement agreement, the Court "should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith v. Wm. Wrigley Jr. Co.,* 2010 U.S. Dist. LEXIS 67832, at *5-6 (S.D. Fla. June 15, 2010). Certification of a class under Federal Rules of Civil Procedure 23(a) and (b) is subject to a different analysis where certification is contested than where, as here, a proposed settlement is under review.

The decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re US. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre- Val v. Buccaneers Ltd. Partn.,* 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir.1977)).

### 1.    The Settlement Resulted from Good Faith Negotiations Among Experienced Counsel and Represents a Reasonable Amount.

"[Final] approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith,* 2010 U.S. Dist. LEXIS, at *7. Here, the proposed Settlement Agreement is the result of arm's length negotiations that occurred during

mediation with an experienced and impartial mediator, factors which weigh heavily in favor of granting approval of the Settlement. *Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well respected mediator"). Moreover, counsel representing the Parties are experienced in class action and complex litigation and were well-versed in the strengths and weaknesses of this case. Additionally, there is no evidence that the Parties, or their counsel, failed to act in good faith or somehow colluded in reaching the Settlement terms and conditions. The Parties and their counsel were aware of the strengths and weaknesses of their positions and proceeded to negotiate in good faith leading to an amicable Settlement Agreement.

The Settlement also falls with a reasonable range. More specifically, and as stated above, the gross recovery, according to the Putative Class size of about 54,000, is $23.00 on a gross basis, resulting in a $14.00 net to each Settlement Class Member. This amount is within a reasonable range of settlements for this type of claim. *See, e.g., Gilbert v. SunTrust Banks, Inc.,* Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement in COBRA notice case with each class member's gross recovery was $32.22).

Additionally, there is a risk that Plaintiff would not prevail on her claims considering there are no decisions directly on-point addressing whether, or not, the language of the COBRA Notice at issue violated any of the applicable legal regulations. *See* 29 C.F.R. 2590.606-4(b)(4) (COBRA notice was written in a manner to be understood by the average plan participant); 29 C.F.R. §2590.606-4(b)(4)(viii) (explanation of the continuation coverage termination date); 29 C.F.R. 2590.606-4(b)(4)(i) (explaining the required identification of the party responsible under the plan for the administration of continuation coverage benefits).

Further, Defendant had available to it numerous defenses, including defenses to class certification and Plaintiff's failure to establish any damages or establish any prejudice by the

COBRA Notice.  *See, e.g., Scott v. Suncoast Bev. Sales, Ltd.,* 295 F.3d 1223 (11th Cir. 2003)(citing *Curry v. Contract Fabricators, Inc.*, 891 F.2d 842, 847 (11th Cir. 1990)); *Sziranyi v. Dunn*, 2009 U.S. Dist. LEXIS 128536 (S.D. Fla. Sept. 30, 2009).  Moreover, evidence of the administrator's good faith, including corrective efforts and the absence of prejudice caused by technical violations, are also significant to the district court's determinations concerning statutory penalties. *Gomez v. St. Vincent Health, Inc.*, 649 F. 3d 583, 591 (7th Cir. 2011).  Some courts have not awarded any statutory penalties in COBRA notice cases in the absence of a showing of bad faith or prejudice. *Id.* at 589-91; *Sanders v. Temenos USA, Inc.*, 2017 U.S. Dist. LEXIS 169288, *25-26 (S.D. Fla. Oct. 13, 2017)(same); *see also Morehouse*, 2018 U.S. Dist. LEXIS 189876, at *45 (recognizing that many courts determine not to impose statutory penalties).  As such, a successful outcome was not guaranteed should Plaintiff continue to litigate her claims.

### 2.  <u>The Settlement Occurred at the Proper Stage of the Proceedings</u>.

The case has been pending for nearly a year.  Mediation occurred only after the Parties exchanged basic information on the size of the Class, and after Plaintiff's counsel was able to evaluate the claims based on prior cases.  Additionally, the Parties' positions were well-known by the time of the mediation.

Moreover, continuing with the litigation would have resulted in complex, costly and lengthy proceedings, including class discovery, depositions, summary judgment motion practice, trial preparations and then a trial on the merits.  It also likely would have involved appellate work.  The time, costs and fees associated with these litigation activities would have been significant.  This factor also supports approval of the Parties' Settlement.

### 3.  <u>Plaintiff and her Counsel Support the Settlement</u>.

Plaintiff and her Class counsel agree to the proposed Settlement, which is further indicated by their execution of the Settlement Agreement.  Plaintiff's counsel provided declarations showing

their support for the Settlement.   (Docs. 33-5, 33-6).   Additionally, to date no class members objected to the Settlement and Notice went out in early-October.

### B.        The Settlement Class Meets the Requirements of Rule 23(a).

A court can certify a settlement class where the proposed class, and proposed class representative, meets the four prerequisites in Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Federal Rule of Civil Procedure 23(b).   *See Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1256, 1265 (11th Cir. 2009).   The proposed Settlement Class in this cause meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation.

### 1.   Numerosity

The proposed Class of approximately 54,000 individuals is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). *See Williams v. Wells Fargo Bank, NA.,* 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate"). The Court may also find the numerosity factor satisfied if it would be difficult, inconvenient, and wasteful to attempt to join numerous plaintiffs into one case, using permissive joinder.   Additionally, the nature and size of the individual claims also make joinder impracticable.

### 2.   Commonality

The United States Supreme Court has clarified that to satisfy the commonality requirement of Rule 23(a), the plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (*citing Gen.  Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)). "[T]his prerequisite does not mandate that all questions of law or fact be common; rather, a single common question of law or fact is sufficient to satisfy the commonality requirement, as long as it affects all class members alike."

*Klewinowski*, 2013 U.S. Dist. LEXIS 130591, at *5-6 (*internal quotations and citation to Dukes*, 131 S. Ct. at 2556, *and others omitted*); *see also Waters v. Cook's Pest Control, Inc.*, 2012 U.S. Dist. LEXIS 99129, at *26-27 (N.D. Ala. July 17, 2012).

The common questions are, among other things: (1) whether Defendant violated COBRA's notice requirements as to content; and (2) whether, and to what extent, statutory penalties are appropriate. These common issues support certification of the proposed Settlement Class for settlement purposes only. *See Pierce v. Visteon Corp.,* 2006 U.S. Dist. LEXIS 98847, at *12 (S.D. Ind. Sept. 14, 2006); *Hornsby v. Macon Cty. Greyhound Park, Inc.,* 2013 U.S. Dist LEXIS 6235, at *5 (M.D. Ala. Jan. 16, 2013). Thus, the claims of the Settlement Class Members are based on the same set, or a similar set, of operative facts. Moreover, even if the award of damages were to vary among class members, the Eleventh Circuit has held that the presence of individualized damages does not prevent a finding of commonality. *See Allapattah Serv., Inc. v. Exxon Corp*., 333 F. 3d 1248, 1261 (11th Cir. 2003). Accordingly, the requirement of commonality has been met for settlement purposes only.

### 3. Typicality is Satisfied

Under Federal Rule of Civil Procedure 23(a)(3), typicality does not require identical claims:

> The focus of Rule 23(a)(3) typicality is whether the class representative's interests are aligned with the proposed class so as to stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits. The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary.

A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). "Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at

large." *Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008). The typicality requirement "is said to limit class actions to those fairly encompassed by the named plaintiffs' claims." *GTE Co. of the Northwest v. EEOC*, 446 U.S. 318, 330 (1980).

In this case, the legal theories underlying the claims of Plaintiff are identical to the putative members in the Settlement Class.  More specifically, Plaintiff alleges she received a deficient COBRA Notice.  The Settlement Class Members are alleged to have received the same COBRA Notice, which Plaintiff alleges contained content that did not comply with the COBRA regulations.  In sum, because Plaintiff, as the Class Representative, has claims that are "typical" of the Class and consequently, the typicality requirement of Rule 23(a)(3) is satisfied for settlement purposes only.  *See* FED. R. CIV. P. 23(a)(3); *Pierce*, 2006 U.S. Dist. LEXIS 98847, at *13 (claims considered typical as "[a]ll of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. §1166, a common course of conduct, and are based upon the same legal theory").

### 4.  Adequacy of Representation

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "This requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. Plaintiff, Angela Hicks, is adequate given that her interests are equivalent to those in the Settlement Class. There is also

no obvious conflict of interest between Named Plaintiff and the Settlement Class. The Plaintiff has the same interest as those in the Settlement Class in prosecuting her claims and participated actively in the litigation.

Here, Plaintiff's counsel have extensive experience litigating other class action cases. *See generally* Docs. 33-5, and 33-6. When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in class action cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.").

### C.   The Class Meets the Requirements of Both Rule 23(b)(1) and Rule 23(b)(2).

The proposed Settlement Class also meets the requirements of Federal Rule of Civil Procedure 23(b)(1) and (b)(2).

#### 1.   Rule 23(b)(1).

Rule 23(b)(1) provides that the Court may certify a class if the prosecution of separate actions by individual class members would either (A) create the risk of inconsistent adjudications that would result in incompatible standards of conduct for the defendant, or (B) would as a practical matter be dispositive of the interests of absent members. Fed. R. Civ. P. 23(b)(1)(A)-(B). Rule

23(b)(1)(A) applies "where the party is obliged by law to treat the members of the class alike." *Dukes*, 564 U.S. at 361 n.11 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Rule 23(b)(1)(A) class certification is used to avoid situations in which separate suits would trap parties "in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." *Rosario v. King & Prince Seafood Corp.*, No. 204-cv-036, 2006 WL 236710, at *14 (S.D. Ga. Mar. 7, 2006) (internal citation omitted).

Here, the driving question at the center of all Settlement Class Member's claims is whether the COBRA Notice sent was deficient in violation of  29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a).  If the Court determines that COBRA notice was deficient, and another Court determines that it is not, those conflicting rulings would create incompatible standards of conduct for Defendant. The Plan is a single, cohesive nation-wide Plan and cannot be operated simultaneously using different COBRA Notices.  Defendant would be left uncertain as to what information its COBRA Notice must contain.  This potential for conflicting decisions meets the requirements of Rule 23(b)(1)(A). *See Henderson v. Emory Univ.*, No. 1:16-cv-2920, 2018 WL 6332343, at * 9 (N.D. Ga. Sept. 13, 2018) (finding requirements of 23(b)(1)(A) met in breach of fiduciary duty case because adjudicating claims individually ran the risk of placing conflicting obligations on plan fiduciaries and recordkeepers); *see also Klewinowski v. MFP, Inc.*, No. 8:13-cv-1204, 2013 WL 5177865, at *3-4 (M.D. Fla. Sept. 12, 2013) (finding requirements of 23(b)(1)(A) met in Fair Debt Collection Practices Act case where prosecution of separate actions could lead to inconsistent legal adjudications).

In addition, the requirements of Rule 23(b)(1)(B) are also met. Plaintiffs brought claims seeking a declaratory judgment and injunctive relief under ERISA, which is limited to relief that is traditionally equitable in nature. *See Green v. Holland*, 480 F.3d 1216, 1224 (11th Cir. 2007). If

Plaintiff succeeds in her argument that the COBRA Notice was deficient, she would obtain a declaratory judgment and injunctive relief to that effect which would require the Plan to stop using the COBRA Notice at issue and change the COBRA Notice to comply with the Court's order.  Any such relief would "inure to the benefit of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). Indeed, because of the plan-wide nature of ERISA's remedial provisions, "ERISA litigation 'presents a paradigmatic example of a (b)(1) class." *Kemp-DeLisser*, 2016 WL 6542707, at *12; *see also Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474, 479 (S.D. Ga. 1991) (certifying ERISA class under Rule 23(b)(1)(B) because any recovery would inure to the benefit of the plan and any individual action would impair the ability of the other beneficiaries and participants to protect their interests.") If one court adjudicates one individual's claim that the COBRA Notice is deficient and grants that person a declaratory judgment and requires the Plan to change the COBRA Notice to ensure it complies with ERISA going forward, that would have a direct and dispositive impact on the ERISA claims of other class members. *See Hodges v. Bon Secours Health Sys., Inc.*, No. 1:16-CV-01079-RDB, 2017 WL 4228018, at *2 (D. Md. July 10, 2017) (finding the requirements of Rule 23(b)(1) satisfied in church-plan case); *Griffith v. Providence Health & Servs.*, No. C14-1720-JCC, 2017 WL 1064392, at *1 (W.D. Wash. Mar. 21, 2017) (same); *Kemp-DeLisser*, 2016 WL 6542707, at *12 (same). The Court should certify the Settlement Class under both Rule 23(b)(1)(A) and (B).

   2. <u>Rule 23(b)(2).</u>

  The proposed Settlement Class also meets the requirements of Rule 23(b)(2). Under Rule 23(b)(2), class certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Heffner v. Blue Cross & Blue*

*Shield of Ala., Inc.*, No. 04-15477, 443 F.3d 1330, 1336 (11th Cir. 2006) (citing Fed. R. Civ. P. 23(b)(2)); *Groover v. Michelin North Am., Inc.*, 187 F.R.D. 662, 670 (M.D. Ala. 1999). Rule 23(b)(2) applies "when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. The fact that the declaratory relief sought is a "prelude to a request for damages" or other monetary relief does not make certification under Rule 23(b)(2) inappropriate. *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 764 (7th Cir. 2003). "As long as the concrete follow-on relief that is envisaged will if ordered . . . be the direct, anticipated consequence of the declaration, rather than something unrelated to it, the suit can be maintained under Rule 23(b)(2)."

Here, as explained above, Plaintiffs seek injunctive relief and a declaratory judgment that Defendant's COBRA Notice is deficient. Thus, any monetary relief flows from the declaratory judgment. Even though the Settlement provides monetary consideration "such monetary consideration is incidental to the equitable relief that Plaintiff[s] requested and the certification of the settlement class is, therefore, appropriate under 23(b)(2)." *Groover*, 187 F.R.D. at 671 (certifying class under Rule 23(b)(2) for claimed violations of ERISA as a result of a reduction in medical benefits); *see also Berger*, 338 F.3d at 763-64. Accordingly, class certification under Rule 23(b)(2) is appropriate. *See, e.g.*, *Kifafi v. Hilton Hotels Retirement Plan*, 189 F.R.D. 174, 177 (D.D.C. 1999) (certifying class under Rule 23(b)(2) for claimed violations of ERISA's anti-backloading and vesting provisions); *Shields v. Local 705, Int'l Broth. of Teamsters*, No. 96 C 1928, 1996 WL 616548, at *5–6 (N.D. Ill. Oct. 23, 1996) (same for claim that defendant improperly withheld plan benefits and service credits from workers after a company merger resulted in a shift to a different plan); *Breedlove v. Tele-Trip Co. Inc.*, No. 91 C 5702, 1993 WL

284327, at *10-11 (N.D. Ill. July 27, 1993) (same for claim that defendants excluded employees from plan after they were improperly reclassified as independent contractors).

The Court should certify the Settlement Class, for Settlement purposes only, under Rule 23(b)(2).

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion.  A proposed Order is attached as Exhibit A.

## CERTIFICATE OF GOOD FAITH

In good faith, Plaintiff's counsel certifies that in conformance with Local Rule 3.01(g), he conferred with Defendant's counsel about the issues raised in Plaintiff's Motion. Defendant does not oppose the relief requested herein.

DATED this 26th day of November, 2019.

Respectfully submitted,

*/s/Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: twels@wfclaw.com
***Attorneys for Plaintiff and the Class***

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 26th day of November, 2019, the foregoing was

electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice

of electronic filing to:

**Jurate Schwartz, Esq.**
**PROSKAUER ROSE LLP**
2255 Glades Road, 421 Atrium
Boca Raton, FL 33431
jschwartz@proskauer.com
kmolloy@proskauer.com
sschaefer@proskauer.com

Stacey C. S. Cerrone
**PROSKAUER ROSE LLP**
650 Poydras Street, Suite 1800
New Orleans, LA 70130
scerrone@proskauer.com

*/s/Brandon J. Hill*
BRANDON J. HILL